# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARTOR KIKI BROWN** | : | |
|        **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 16-4640** |
|        **v.** | : | |
| | : | |
| **CEC, et al..,** | : | |
|        **Defendants.** | : | |
| | : | |

**McHUGH, J.**                                                                                       **July 21, 2020**

## MEMORANDUM

This is a *pro se* civil rights action brought by a prisoner against various corrections officials, medical staff members, and the facility in which he was incarcerated. Plaintiff alleges that he was the target of repeated assaults by another inmate that was orchestrated by a pair of corrections officers in retaliation for a grievance he filed against two of their colleagues. He seeks relief under 42 U.S.C. § 1983 on a variety of theories. Defendants now move to dismiss, contending that Plaintiff has not stated a claim upon which relief can be granted. For the reasons that follow, I will grant Defendants' Motion in part, and deny it in part.

I.    **The Pleaded Facts**

   A. **Brown's meeting with Burns, Lynch, and Moore**

At the time of the events in the Second Amended Complaint (SAC), Plaintiff Gartor Kiki Brown was a pretrial detainee in solitary confinement at the George W. Hill Correctional Facility.[1]  SAC ¶¶ 14, 29.  The facts recounted in the Complaint are hard to decipher, but they appear to be as follows.  On July 6, 2016, Brown allegedly attended a review meeting with three members of prison leadership:  Warden Burns, Chief of Security Lynch, and Michael Moore, the institution's inmate classification coordinator.  SAC ¶¶ 7-9, 14.  At the meeting, Brown described a series of incidents that occurred between himself and Defendants Baldwin and Liverpool,[2] both of whom were corrections officers.  SAC ¶¶ 10-11.  Brown's troubles with Baldwin and Liverpool purportedly began

---

[1] Although the parties do not address Brown's prisoner status during the events set forth in the Complaint, it appears that he was a pretrial detainee based upon a review of Docket Sheets available from the Courts of Common Pleas of Chester County and Delaware County, of which I may take judicial notice.  *See, e.g.*, CP-23-CR-0006208-2015, CP-23-CR-0002127-2016, CP-23-CR-0002126-2016, and CP-15-CR-0001977-2016. Full court summary available at https://ujsportal.pacourts.us/DocketSheets/ CourtSummaryReport.ashx?docketNumber=CP-23-CR-0002127-2016&dnh=ox6zCY2MlhbhwSe RRDOSZA%3d%3d (last accessed Apr. 9, 2020).  The Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012) ("On a motion to dismiss, courts take judicial notice of documents which are matters of public record.") (citation omitted).

[2] Defendants aver that "Defendant C/O Liverpool is no longer employed at George W. Hill Correctional Facility, has not been served with original process, and is not part of the instant Motion."  Def. Mot. to Dismiss, ECF 24 ¶ 12.

after Brown filed a grievance against two of their colleagues—Savadogo and Kroll—in connection with a cavity search those two had performed. SAC ¶ 14.

Brown allegedly told officials that soon after filing the grievance, his food trays were withheld by another inmate named Naylor, who served as an orderly. SAC ¶ 14. Brown raised the issue with Baldwin and Liverpool, neither of whom offered a response to his complaints and told him instead to drop his grievance against Savadogo and Kroll. SAC ¶ 14. After speaking to Brown, Baldwin and Liverpool walked to Naylor's cell and communicated Brown's complaints about the withholding of the trays. SAC ¶ 15. On a later set of deliveries, Naylor again withheld Brown's food tray and further escalated things by throwing a cup of urine in Brown's face and calling him "a rat." SAC ¶ 15. Naylor told Brown that it was Baldwin and Liverpool who had orchestrated the scheme to deprive him of trays because of his grievance against Savodogo and Kroll. SAC ¶ 15.

Brown avers that he went on to tell officials that on July 4, 2016, Baldwin and Liverpool ordered all the doors on Brown's cellblock opened, which allowed Naylor to leave his cell and confront Brown a second time. SAC ¶ 14. Naylor entered Brown's cell, struck Brown in the face, and called him "a rat." SAC ¶ 14. Naylor then informed Brown that Baldwin and Liverpool were behind that attack as well. SAC ¶ 14.

Brown further contends he provided officials with a statement from another inmate named White, who described Baldwin and Liverpool's efforts to recruit him for another attack on Brown. SAC ¶ 15. White said in the statement that he aborted the mission because he and Brown, though former enemies, had settled their differences. SAC ¶ 15. White also warned of another planned attack on Brown that was already in motion. SAC ¶ 15.

Brown alleges that at the end of the meeting, the officials purportedly told him they had seen the tape of the incident with Savodogo and Kroll, and they would leave Baldwin free to carry out further reprisals if Brown did not withdraw his grievance. SAC ¶ 16.

### B. The Shower attack and its aftermath

The next day, Baldwin allegedly confronted Brown on his way to the shower and accused him of being a "rat" because he had complained to prison leadership. SAC ¶ 17. Baldwin ordered the doors to Naylor's cell opened and told Liverpool to "take [Brown] to the shower so [Naylor] can fuck him up off-camera." SAC ¶ 17. Liverpool took Brown to the shower, where Naylor assaulted Brown as planned. SAC ¶ 17. Baldwin and Liverpool only stopped the assault after Naylor had injured Brown. SAC ¶ 17. After the attack, Baldwin and Liverpool told Brown "that's what you get, rat." SAC ¶ 17. Liverpool documented the incident

4

but made no mention of his or Baldwin's involvement in orchestrating it. SAC ¶ 17.

Brown pleads that he went to the infirmary with a bleeding and broken nose as well as injuries to his eyes, shoulders, and a deep cut on his right hand. SAC ¶ 20. He sought treatment for his injuries from Dr. Phillips and Nurse Alassa and also reported the details of the assault to them. SAC ¶ 20. Despite his injuries, Brown alleges he was not given treatment. SAC ¶ 20. During two later encounters at the infirmary, Brown informed Nurse Alassa that he was experiencing pain severe enough to prevent him from sleeping. SAC ¶ 20. Brown avers that Nurse Alassa simply said his hand looked as though he were wearing a boxing glove and walked away. SAC ¶ 20.

Based on these allegations, Brown advances a series of claims against several individuals at the facility. He appears to assert claims under 42 U.S.C. § 1983 against Burns, Lynch, Moore, Baldwin, and Liverpool (hereinafter "Correctional Defendants") for failing to protect him from attacks by other inmates in violation of his Fourteenth Amendment rights, conspiracy to violate his civil rights, and retaliation in violation of his First Amendment rights. He also appears to assert claims under § 1983 against Dr. Phillips and Nurse Alassa (hereinafter "Medical Defendants") for depriving him of medical treatment in violation of his

Fourteenth Amendment rights.  Finally, he asserts a claim of municipal liability against CEC.

## II.     Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Because Plaintiff is proceeding *pro se*, his pleadings must be liberally construed.  *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).

## III.    Discussion

To state a § 1983 claim, Brown must allege facts showing that Defendants "acted under the color of state law and denied him a federally protected constitutional or statutory right."  *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).  Moving Defendants do not dispute the adequacy of the allegations that they acted under the color of state law.  Thus, I focus only upon whether Brown has sufficiently alleged that Moving Defendants denied him his constitutional rights.  As more fully explained below, I conclude that in some respects he has.

### A. Brown pleads a Fourteenth Amendment Due Process violation sufficient to survive Defendants' Motion to Dismiss

Brown alleges that the Correctional Defendants failed to protect him from attack by other inmates and that the Medical Defendants deprived him of necessary

6

medical treatment. SAC ¶¶ 18-24. Pretrial detainees, like Brown, are entitled to "greater constitutional protection than that provided by the Eighth Amendment," *Hubbard v. Taylor*, 399 F.3d 150, 167 n.23 (3d Cir. 2005), for the Eighth Amendment "does not apply until 'after sentence and conviction.'" *Id*. at 164 (citing *Graham v. Connor*, 490 U.S. 386, 392 (1989)). Instead, courts must look to the Due Process Clause of the Fourteenth Amendment "rather than the Eighth Amendment in considering the claims of pretrial detainees" because "[d]ue process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). I will therefore construe the relevant allegations of Brown's Complaint as asserting a violation of his Fourteenth Amendment substantive due process right to be free from punishment. *Id*.; *see also Davis v. City of Philadelphia*, 284 F. Supp. 3d 744, 751 (E.D. Pa. 2018) (McHugh, J.).

***1. Brown sufficiently alleges failure to protect him from inmate violence.***
To establish a prima facie claim, a plaintiff must plead facts showing "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) [prison officials were] deliberately indifferent to that substantial risk to his health and safety, and (3) the [officials'] deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). To establish deliberate indifference, a plaintiff must allege that prison officials knew of specific facts that demonstrated he faced a substantial risk of harm. *Id*. (citing *Beers-Capitol v. Whetzel*, 256 F.3d

120, 125 (3d Cir. 2001)). The Court of Appeals has specifically held that a corrections officer's failure to intervene in an inmate-on-inmate assault "constitue[s] a paradigm case of deliberate indifference." *Id*. (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008)).

Defendants level two objections at the sufficiency of Brown's allegations. First, they contend that Brown does not identify the specific Defendants liable for the alleged constitutional violations. I disagree. Brown names the specific Defendants alleged to be involved in the attacks and provides specific details about each individual's role in them. Second, Defendants contend that Brown fails to make the necessary showing of deliberate indifference because he has not pled facts supporting the notion that the Correctional Defendants knew about the attacks, and they argue in the alternative that he has only alleged that Officer Liverpool had such knowledge. Again, I disagree. Brown pleads facts establishing both Baldwin and Liverpool's involvement in—and direction of—all three attacks as well as their failure to intervene in the third attack. Furthermore, the allegations show that senior leadership knew that Brown faced a "substantial risk of serious harm" because Brown presented a detailed account of the two attacks that had already taken place and presented them with a warning from another inmate that a third attack was imminent.

Brown has therefore made a prima facie showing that he faced a substantial risk of serious harm, that prison officials were aware of—and deliberately indifferent to—that harm, and that their deliberate indifference caused him to be injured.  *See Bistrian*, 696 F.3d at 367.  Accordingly, Brown's failure to protect claim is sufficient to withstand Defendants' Motion to Dismiss.

***2. Brown narrowly states a claim for the deprivation of adequate medical care.***  In this Circuit, a pretrial detainee states a claim for the deprivation of adequate medical care by pleading facts that show (1) plaintiff had a serious medical need, and (2) defendants were deliberately indifferent to that need.  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  To establish deliberate indifference, a plaintiff must allege that the defendant knew of and disregarded a substantial risk of harm to the plaintiff's safety.  *Natale*, 318 F.3d at 582.

Brown alleges that he reported to the infirmary with injuries from the attack, the most serious of which included a broken nose and a deep cut on his left hand. He further alleges that he received no treatment for those injuries.  Defendants

9

contend that Brown's allegations do not demonstrate that he had a serious medical need, nor that the Medical Defendants were deliberately indifferent. I am aware that Brown's allegations present a close question, but I conclude that the facts, as alleged, state a claim for the deprivation of adequate medical care. Based on Brown's allegations, I am satisfied the injuries described in the Complaint would have caused a lay person to conclude that some treatment was necessary. I am also satisfied that, having been told Brown was attacked, the failure to offer treatment for those injuries would constitute deliberate indifference. Brown may yet find it difficult to provide evidence supporting his claims, but for now, he has made a sufficient showing to withstand Defendants' Motion to Dismiss.

### B. Brown fails to state a claim for a Fourteenth Amendment Equal Protection Clause violation

Brown's equal protection violation claim contains little substance. Because he proceeds *pro se*, I will construe the Complaint liberally to allege that he was treated differently than other inmates because he filed a grievance against Savadogo and Kroll. Brown appears to state a "class of one" equal protection claim. "[T]o state a claim under a class of one theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Madar v. United States Citizenship & Immigration Servs.*, 918 F.3d 120, 124 (3d Cir. 2019) (cleaned up). Brown is unable to clear the first hurdle of

the analysis because he does not plead facts demonstrating that he received treatment that differed from similarly situated individuals, let alone identify the relevant population. Importantly, I believe that the substance of Brown's equal protection claim, as alleged, is more properly analyzed in the context of his retaliation claim, which is addressed below. Defendants Motion will therefore be granted as to this claim.

### C. Brown adequately alleges conspiracy against some but not all of the Correctional Defendants

Brown alleges in the Complaint that the Correctional Defendants acted "in concert and conspiracy" to violate his civil rights. SAC ¶ 18. The Court of Appeals has set forth the elements necessary to establish a claim of conspiracy under § 1983:

> The elements of a claim of conspiracy to violate federal civil rights are that (1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law.

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (cleaned up). Defendants urge that Brown does not adequately plead a claim of conspiracy under § 1983 because he has not alleged the existence of an agreement between the

11

Correctional Defendants and, instead, makes "general conclusory allegations without support." ECF 24, at 19 (citing ECF 22 ¶ 18).

The existence of an agreement is fundamental to any conspiracy. Although the Court of Appeals has recognized that plaintiffs may support allegations of a conspiracy with circumstantial evidence of an agreement between the conspirators, it has stressed the need for plaintiffs to support their allegations with sufficient facts. *See Jutrowski*, 904 F.3d at 295. Brown's conspiracy claim, therefore, presents another close question. To be sure, Brown provides a troubling set of facts about the involvement of each Correctional Defendant in the deprivation of his rights. As relevant here, Brown pleads facts showing that Baldwin and Liverpool clearly worked in tandem to engineer the attacks on him as well as arrange the deprivation of food trays through Naylor. And running through the Complaint is the common theme that each Correctional Defendant, at one point or another, either instructed Brown to drop his grievance against Savodogo and Kroll or cited the grievance as a reason for their conduct. On balance, however, the facts alleged appear to be far more definite on this issue as to Baldwin and Liverpool than it does against their superiors. I therefore conclude that, at this stage of the proceedings, Brown has alleged facts giving rise to circumstantial evidence of a conspiracy involving Baldwin and Liverpool, but not involving Burns, Lynch, and Moore.

### D. Brown adequately alleges retaliation against some but not all of the Correctional Defendants

Brown's claim for conspiracy shares a factual nexus with his claim for retaliation,[3] and the ensuing analysis leads to the same conclusion as to which Defendants are implicated by Brown's allegations. Brown alleges that the Correctional Defendants retaliated against him for filing his grievance. It is axiomatic that "[retaliation] against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian*, 696 F.3d at 376. Thus, "[t]o state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Id*. (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (cleaned up). Brown satisfies the first and third prongs of the test because filing a grievance against a corrections officer "implicates conduct protected by the First Amendment," *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), and Brown alleges that his grievance was the motivating factor behind the attacks. Therefore, the remaining question is whether a physical attack, while adverse in a general sense, is the kind of action contemplated by the Third Circuit's retaliation claim analysis. Although retaliation

---

[3] Defendants do not address Brown's retaliation claim in their Motion to Dismiss. I nonetheless proceed to analyze the claim to determine if it has been adequately pled.

13

claims usually arise when prison officials use permissible disciplinary measures to deprive prisoners of their privileges for an impermissible purpose, a panel of the Third Circuit has concluded such claims are also viable when officials resort to harassment and abuse.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).  I therefore surmise that Brown's allegations satisfy the "adverse action" prong.

As with Brown's conspiracy claim, the allegations in the Complaint implicate Baldwin and Liverpool with more clarity than Burns, Lynch, and Moore. Brown alleges that Baldwin and Liverpool made statements to him that directly tied the attacks to the grievance, a link that Naylor ostensibly confirmed.   Brown provides a far weaker factual showing that Burns, Lynch, and Moore were involved at all in the planning or execution of the attacks, and the failure to do so undermines Brown's allegation that they retaliated against him.  I will therefore grant the motion as to Burns, Lynch, and Moore, and deny the motion as to Baldwin and Liverpool.

### E. Brown fails to state a municipal liability claim against CEC

Brown's municipal liability claim against CEC rests on the theory that he was injured because of the facility's policy of housing differently classified inmates in the same cellblock and the lack of safeguards to stop resulting inmate violence.  SAC ¶ 19.  Defendants contend that Brown's allegations are insufficient

as a matter of law to establish municipal liability on the part of CEC. Defendants are correct. Brown's claim founders because he does not plead facts demonstrating that CEC's policy was the "moving force" behind his injuries. *See Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 400 (1997)). On the contrary, the allegations in the Complaint support the theory that Brown's injuries resulted from Baldwin and Liverpool's deliberate orchestration of attacks by other inmates, not simply because inmates of different classifications interacted with one another in the same space. Moreover, on the facts alleged, Baldwin and Liverpool's acts are not attributable to CEC because municipal liability under § 1983 may not be premised on a *respondeat superior* theory. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Brown's municipal liability claim must therefore be dismissed.

## IV.   Conclusion

For the reasons set forth above, Defendants' Motion will be granted in part and denied in part. An appropriate Order follows.

    /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge