**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GARTOR KIKI BROWN** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 16-4640** |
| : | |
| **C.E.C., ET AL.** : | |

**MCHUGH, J.**                                                                                              February 3, 2023

## MEMORANDUM

This is a civil rights action brought by Gartor Kiki Brown, a pro se litigant well known to this Court, against various corrections officials and medical staff members who worked at the prison where he was incarcerated during the events at issue. Mr. Brown alleges that a pair of corrections officers arranged for another prisoner to assault him repeatedly in retaliation for a grievance he filed against two of their colleagues, and thereafter medical staff refused to treat his resulting injuries. He seeks relief under 42 U.S.C. § 1983 on a variety of theories. Defendants now move for summary judgment, contending that Brown failed to administratively exhaust his claims as required by the Prison Litigation Reform Act ("PLRA"), and that he lacks evidentiary support for his claims. Because I am persuaded that Brown did not administratively exhaust his claims, I will grant summary judgment as to all of them.

**I.     Relevant Background**

**A.  The events surrounding July 7, 2016**

At the time of the events in question, Mr. Brown was a pretrial detainee at the George W. Hill Correctional Facility ("George W. Hill"). Pl. Decl. ¶¶ 2-19, ECF 43 at 3-4; SAC ¶¶ 14, 29.[1]

---

[1] He is currently in the custody of the Department of Homeland Security, awaiting removal from the United States because of the criminal offenses he committed here.

On July 6, 2016, Brown allegedly attended a review meeting with three members of prison leadership: Warden Burns, Chief of Security Lynch, and Michael Moore, the institution's Classification Coordinator. Pl. Decl. at ¶¶ 10-15; SAC ¶¶ 7-9, 14. According to Brown, he described a series of incidents that occurred between himself and Defendants Baldwin and Liverpool, both of whom were corrections officers. Pl. Decl. at ¶¶ 10-15; SAC ¶¶ 10-11, 14-16. Brown's troubles with Baldwin and Liverpool purportedly began after Brown filed a grievance against two of their colleagues—Savadogo and Kroll—in connection with a cavity search those two had performed. Pl. Decl. at ¶ 11; SAC ¶ 14.

Brown purportedly told officials that soon after filing the grievance, his food trays were withheld by another prisoner named Naylor, who served as an orderly. Pl. Decl. at ¶ 11; SAC ¶ 14. Brown raised the issue with Baldwin and Liverpool, who allegedly admitted that they had instructed Naylor and other incarcerated workers to deprive Brown of food. Pl. Decl. at ¶ 11; SAC ¶ 14. After speaking to Brown, Baldwin and Liverpool walked to Naylor's cell and communicated Brown's complaints about the withholding of the trays. Pl. Decl. at ¶ 11; SAC ¶ 15. On a later set of deliveries, Naylor again withheld Brown's food tray and further escalated things by throwing a cup of urine in Brown's face and spitting on him. Pl. Decl. at ¶ 11; SAC ¶ 15. Naylor told Brown that it was Baldwin and Liverpool who had orchestrated the scheme to deprive him of trays because of his grievance against Savadogo and Kroll. Pl. Decl. at ¶ 11; SAC ¶ 15.

Brown avers that he went on to tell officials that on July 4, 2016, Baldwin and Liverpool ordered all the doors on Brown's cellblock opened, which allowed Naylor to leave his cell and confront Brown a second time. Pl. Decl. at ¶ 12; SAC ¶ 15. Naylor entered Brown's cell, struck Brown in the face, and called him "a rat." Pl. Decl. at ¶ 12; SAC ¶ 15. Officers Baldwin and Liverpool also purportedly attempted to enlist another incarcerated person—Richard White—to

assault Brown on July 5, though White refused to do so. Pl. Decl. at ¶ 14; SAC ¶ 15; Pl. Ex. 42 (Declaration of Richard White), ECF 43-1 at 27.

Brown alleges that at the end of the meeting, the officials purportedly told him they had seen the tape of the incident with Savadogo and Kroll, and they would leave Baldwin free to carry out further reprisals if Brown did not withdraw his grievance. Pl. Decl. at ¶ 15; SAC ¶ 16.

On July 7, Baldwin and Liverpool allegedly confronted Brown and accused him of being a "rat" because he had complained to prison leadership. Pl. Decl. at ¶ 16-17; SAC ¶ 17. Baldwin ordered the doors to Naylor's cell opened and told Liverpool to take Brown to the shower so that Naylor could assault him off-camera. Pl. Decl. at ¶ 17; SAC ¶ 17. Liverpool then took Brown to the shower, where Naylor assaulted Brown as planned. Pl. Decl. at ¶ 18; SAC ¶ 17. And Baldwin and Liverpool also conspired to make Brown appear at fault for the incident. Pl. Decl. at ¶ 18; SAC ¶ 17.

Brown claims that he went to the infirmary with a bloody nose, an open cut on his hand, pain in his back and shoulder, and numbness in his face. Pl. Decl. at ¶ 19; SAC ¶ 20. He sought treatment for his injuries from Dr. Phillips and Nurse Alassa but was ignored and later told that they "do not treat people who sue [them]." Pl. Decl. at ¶ 19; SAC ¶ 20. During two later encounters at the infirmary, Brown informed Nurse Alassa that his symptoms had worsened, and Nurse Alassa confirmed that his hand had swollen to the point of looking like a boxing glove but still failed to treat him. Pl. Decl. at ¶ 20; SAC ¶ 20.

In stark contrast with Mr. Brown's narration of events, Defendants claim that Brown's only encounter with Naylor consisted of Brown assaulting Naylor on July 7. Def. Memo. in Support of Mot. for Summ. J. at 2, ECF 40. According to a July 7 incident report, Liverpool was supervising Brown during recreation time when Brown asked Liverpool if he could shower. Def. Ex. A, ECF

40-1 at 2. After Liverpool uncuffed Brown, Brown ran past Liverpool and began punching Naylor in the face. *Id*. The incident report states that Brown admitted to assaulting Naylor during a post-incident interview. *Id.* Defendants cite the medical records they submitted as demonstrating that Brown suffered only a small cut on his finger from this incident, which was promptly treated with a band-aid and antibiotics. Def. Memo. in Support of Mot. for Summ. J. at 7; Def. Ex. A-B, ECF 40-1 at 9-10, 44-45.

In their answer to the amended complaint, Defendants deny Brown's allegations that the prison's Warden, Director of Security, and Classification Coordinator had all made themselves available for a meeting with him, during which they made damaging admissions. ECF 30.

### B. Procedural posture of the case

Mr. Brown thereafter filed suit in this court, advancing a series of claims against several individuals at the facility, of which the following remain: claims under 42 U.S.C. § 1983 against Baldwin and Liverpool for failing to protect Brown from attacks by other prisoners in violation of his Fourteenth Amendment rights, conspiracy to violate his civil rights, and retaliation in violation of his First Amendment rights, along with claims under § 1983 against Dr. Phillips and Nurse Alassa for depriving him of medical treatment in violation of his Fourteenth Amendment rights. With discovery closed, Defendants have moved for summary judgment, relying in part on the doctrine of exhaustion. Because there is a factual dispute as to whether Brown had administratively exhausted his claims, I entered an Order providing notice that I would consider the preliminary issue of exhaustion in my role as fact-finder and directing the parties to submit any supplemental briefing and additional materials on the issue by January 9, 2023.[2] ECF 44.

---

[2] Before deciding factual disputes regarding exhaustion, a district court must notify the parties that it will consider exhaustion in its role as a fact-finder and provide parties with an opportunity to respond. *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018). A full-scale evidentiary hearing is not required for every

Defendants have filed a reply brief supported by an affidavit of Emmanual Asante, the Central Records Supervisor at George W. Hill Correctional Facility. ECF 45. Brown has not filed any supplemental briefing or materials, and I therefore rely on his original response brief and any attachments thereto.

## II.     Standard of Review

This motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as described by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).

Because "exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time,'" "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 270-71 (3d Cir. 2013) (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)). Failure to exhaust is an affirmative defense that Defendants must plead and prove for each contested claim. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Small*, 728 F.3d at 268.

## III.    Discussion

The PLRA requires plaintiffs to exhaust internal prison grievance procedures before filing suit in court. 42 U.S.C. § 1997e(a); *Small*, 728 F.3d at 268. In enacting the PRLA,

> Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

---

factual dispute, but "a district court must at least provide the parties with an opportunity to submit materials relevant to exhaustion that are not already before it." *Id*.

*Porter v. Nussle,* 534 U.S. 516, 525-525 (2002) (internal citations omitted).  In determining whether a plaintiff has administratively exhausted his claims, courts evaluate the plaintiff's "compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials."  *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).  The Supreme Court has explained that "[c]ompliance with prison grievance procedures" is required to "properly exhaust."  *Jones*, 549 U.S. at 218.

The George W. Hill Correctional Facility Inmate Handbook sets forth the facility's internal prison grievance process for incarcerated individuals who have complaints that cannot be resolved through other means.  Def. Ex. E (the Inmate Handbook) at 45-46, ECF 40-1; Def. Ex. D (Gartor Brown's signed acknowledgment form for receiving the Inmate Handbook), ECF 40-1.  The Handbook establishes a three-step grievance process:

1. Grievants must first exhaust existing informal channels before submitting a formal grievance.

2. Grievants must then complete a grievance form, which the George W. Hill Correctional Facility refers to as a Step 1 grievance form.  George W. Hill requires grievance forms to include a description of the problem and the action requested.  Grievants retain a pink carbon copy of the completed form and place the other two copies of the form in a grievance box.

3. Grievants will then receive a response to the grievance and have seven days to write an appeal of the original grievance to the warden, which the George W. Hill Correctional Facility refers to as a Step 2 grievance form.

Def. Ex. E at 45-46.  In the Handbook, prisoners are advised that they must first seek assistance from their Unit Supervisor and given notice in all capital letters: "EXISTING INFORMAL

CHANNELS MUST BE EXHAUSTRED BEFORE SUBMITTING A FORMAL GRIEVANCE. WHEN FILING YOUR GRIEVANCE, STATE THE STEPS YOU HAVE TAKEN TO RESOLVE YOUR PROBLEM." *Id.*

In their motion for summary judgment, Defendants argued that Brown "never filed any grievances related to any assault by Naylor, against Sgt. Baldwin or Liverpool, or about his medical treatment." ECF 40 at 3. Defendants attached what they alleged to be the recorded grievances from that time period as proof. Def. Ex. F, ECF 40-1. In response, Brown argued that he *had* filed relevant grievances, including a Step 2 grievance form, which George W. Hill had failed to timely respond to. Brown attached to his response what he alleged were genuine grievances submitted to George W. Hill. Pl. Ex. 2, 3, 4, 9, 10, 11, 12, 52, 53, 54, 55, ECF 43, 43-1.[3] After reviewing the briefing and record evidence pertaining to the issue of administrative exhaustion, I conclude that Defendants have proven that Brown failed to comply with George W. Hill's internal prison grievance procedures.

Brown attached numerous George W. Hill grievance forms to his response brief as proof of administrative exhaustion. Six of these were submitted before July 7, 2016, and necessarily concern earlier events, rendering them irrelevant to my analysis. Pl. Ex. 2, 3, 52, 53, 54, 55. Another of the forms—Brown's Exhibit 4—was in fact submitted and received by George W. Hill, *see* Def. Ex. F, ECF 40-1 at 129, and will be addressed below. The others all bear strong indices of either never being submitted or being manufactured after the fact, as I will address in more

---

[3] Brown also attached a Curran-Fromhold Correctional Facility ("CFCF") grievance form submitted to CFCF after he was transferred there. Pl. Ex. 13. This grievance form does not relate to George W. Hill's internal grievance process, and Brown does not appear to argue that this form is evidence of administrative exhaustion for his claims against George W. Hill's employees. *See* Pl. Response to Defs' Statement of Material Facts ¶ 5, ECF 43 at 2; Pl. Response at 8, ECF 43 at 10 (listing Exhibits 2, 4, 9, 10, 11, and 12 as proof that Brown submitted grievances and exhausted his administrative remedies).

7

detail below, and therefore fail as proof of Brown's compliance with the prison's grievance procedures.  Pl. Ex. 9, 10, 11, 12.

I begin with Brown's Exhibit 4, the one authentic grievance potentially relevant to the case.  On July 8, 2016, Brown submitted a Step 1 grievance form that consisted of a series of rhetorical questions that vaguely allude to the events of July 7.  Def. Ex. F, ECF 40-1 at 129.  Prison records confirm that a George W. Hill Grievance Coordinator—John D. Swider—received the form on July 14, 2016.  *Id.*  Thus, as to this grievance, the carbon copy submitted by Brown corresponds with the records of the prison.  The grievance form sets forth a series of rhetorical questions that does not coherently describe the problem that Brown was alleging.  It refers to a correctional officer uncuffing him but is not explicit as to how this relates to the grievance he is seeking to assert.  Even if construed generously, it does not allege that officers conspired or collaborated in having other prisoners attack Brown.  More importantly, it does not request any specific action or set forth what informal steps Brown took to address the issue.

In *Spruill*, the Third Circuit held that failure to comply with an institution's grievance procedure can bar a claim much like the doctrine of procedural default in habeas corpus proceedings.  372 F.3d at 231-33.  Here, Brown's grievance suffers from three deficits: failure to include a description of the problem; failure to specify any action sought; and failure to set forth the steps taken to address the problem through informal channels.  As to the latter two deficits, there is no colorable construction of Brown's Exhibit 4 supporting a conclusion that his grievance complied with the controlling Handbook.  As to its description, even if one infers from the questions posed that an officer followed poor security procedures, nothing suggests that the officers deliberately put Brown at risk to retaliate against him, which is the essence of the claim

8

here.[4] In short, upon review of the one grievance indisputably submitted that could be said to address the claims in this case, Brown failed to exhaust because of material violations of the controlling grievance procedure.

I turn next to whether other grievance forms submitted by Brown can reasonably be viewed as authentic. The defense supports its position with an affidavit from Emmanual Asante, George W. Hill's Central Records Supervisor. He attests that "[i]n and around 2016, there was a process in place where grievances were logged into a central computer system, and also paper copies were kept in the inmate's files. The grievances were stamped with a date of receipt, and given a unique number which was recorded in the computer system." Asante Aff. ¶ 3, ECF 45-1. Asante further represents that

> [i]n [his] years of experience working at the George W. Hill Correctional Facility as Grievance Coordinator and then in records, [he has] found the grievance system and record keeping to be very reliable since there is both an electronic record and a paper record. Therefore, it would be very unlikely to lose or have no record of a grievance that had been properly submitted to the grievance coordinator.

*Id*. at ¶ 9. Mr. Asante "reviewed the records from the prison, the electronic records of the Plaintiff's inmate grievances, and the records [that Brown had attached to his response brief]," and concluded that there was no record of any of these grievances that Brown now alleges he submitted. *Id*. at ¶¶ 7-8, 12.

In addition to this evidence of the general reliability of George W. Hill's recordkeeping system, Asante's affidavit casts doubt on the legitimacy of the specific grievance forms that Brown attached to his response brief. Setting aside Exhibit 4, discussed above, none of the forms that postdate the events of July 7 contain the name of a grievance coordinator who received the grievance or the date on which it was received, nor do they contain a grievance coordinator's stamp

---

[4] The record before me does not reflect whether or how the prison responded to this grievance, and the parties' submissions have not addressed this question with any clarity.

as is standard for filed grievances. Asante Aff. ¶ 14; Pl. Ex. 9, 10, 11, 12. The grievances are all written in dark ink, but because prisoners only retain a pink carbon copy of their grievances, the writing on their copies is typically very faded. Asante Aff. ¶ 16; Pl. Ex. 9, 10, 11, 12. The unfaded nature of the writing on Brown's exhibits therefore casts doubt on their legitimacy. Asante Aff. ¶ 16; Pl. Ex. 9, 10, 11, 12. Finally, several of Brown's grievance forms have faded marks underneath dates or other writing, which appear to be previous writing that was possibly erased and written over. Asante Aff. ¶ 17; Pl. Ex. 9, 12. Asante's affidavit further explains that such erasure would not have been possible on genuine grievance forms, because carbon paper cannot be erased and written over. *Id*.

Mr. Asante's testimony provides evidence of the reliability of George W. Hill's recordkeeping system, in compliance with the requirements of *Paladino*. There, the Third Circuit overturned a district court's finding of administrative exhaustion because of a lack of evidence of such reliability in the face of a discrepancy between the prison's records showing no relevant grievance and the plaintiff's deposition testimony that he had submitted at least six. *Paladino*, 885 F.3d at 208-211. In so ruling, the Third Circuit emphasized that the prison's argument depended on the reliability of its recordkeeping system but that "the record [was] bereft of evidence that the Prison's recordkeeping system [was] reliable." *Id*. at 211. The Third Circuit noted that the prison "employ[ed] a paper-based record system, as opposed to an electronic system, for forms filed by" prisoners, *id.* at 211 n.47, raising a question as to the system's completeness and dependability. As part of its analysis, the Court of Appeals cited *Dawson v. Cook*, 238 F. Supp. 3d 712, 719 (E.D. Pa. 2017), with approval. There, the court concluded that "despite deposition testimony to the contrary, there was 'no basis . . . to conclude that Plaintiff submitted a grievance that was not recorded' because there was 'no electronic record of the grievance' in the Philadelphia Prison

10

System's electronic system." *Paladino*, 885 F.3d at 211 n.47 (quoting *Dawson*, 238 F. Supp. 3d at 719).

In this case, Mr. Asante's affidavit attesting to the reliability of the prison's system, together with his cogent examination of anomalies in the exhibits submitted by Brown, for which Brown offers no rebuttal, persuade me that the documents Brown cites aside from his Exhibit 4 are not authentic and may be discounted.

I am also compelled to observe that Mr. Brown has proven himself untrustworthy in previous cases before this Court. He has attempted to survive summary judgment by submitting sworn testimony that was proven false by record evidence, including in one case by a videotaped recording that plainly contradicted Brown's allegations, *Brown v. Upper Darby Police Dep't*, No. CV 16-2255, 2020 WL 733108, at *4-*5 (E.D. Pa. Feb. 13, 2020), *aff'd*, No. 20-1452, 2021 WL 2948833 (3d Cir. July 14, 2021), and two others where voluminous, contemporaneous medical records refuted his claim of serious physical injury. *Brown v. Phillips*, No. CV 16-3887, 2020 WL 6158230, at *3-*4 (E.D. Pa. Oct. 21, 2020), *aff'd sub nom. Brown v. Moore*, No. 20-3600, 2022 WL 1772992 (3d Cir. June 1, 2022); *Brown v. Phillips*, No. CV 16-2566, 2021 WL 2903116, at *10-*11 (E.D. Pa. July 9, 2021). In those cases, I found that Mr. Brown "demonstrated willingness 'to do whatever it takes' to keep a case alive," including falsifying testimony, and I followed the Third Circuit's admonition that district courts should not place weight upon transparent attempts to defeat summary judgment. *Brown*, No. CV 16-3887, 2020 WL 6158230, at *4 (citing *Martin v. Merrell Dow Pharm., Inc.,* 851 F.2d 703, 705-06 (3rd Cir. 1988)). That prior experience lends support to Mr. Asante's conclusion that the copies of grievances submitted here are not genuine.

Because Defendants have proven that all but one of the potentially relevant grievance forms were either never submitted or fraudulent, and have further proven that the one authentic grievance

11

was fatally flawed, I conclude that Mr. Brown has failed to administratively exhaust each of his claims.

## IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment will be granted in its entirety.

/s/ Gerald Austin McHugh
United States District Judge
